## WILLIAM H. DOLE, impleaded, etc.
### *v.*
## LAWRENCE KENNEDY.

1. ARREST OF JUDGMENT—*verdict responsive to issues.* As a general rule, no judgment can be rendered in any action, until all the material issues of fact are determined.

2. SAME—*verdict in replevin, when sufficient.*—In an action of replevin, when the declaration was for a wrongful taking and detention of property, with a count in trover, and the pleas were *non cepit*, property in the defendant to first count, and not guilty to second count, formal issues being made upon these pleas: *Held*, that a verdict which found the property in the plaintiff, and defendant guilty of an unlawful detention, and assessed nominal damages, determined the issues made.

3. VERDICT IN REPLEVIN. In an action of replevin there is no general issue, and when a plea of *non cepit* is interposed, a verdict of not guilty is responsive to the issue.

4. INSTRUCTIONS. It is not error to refuse to instruct a jury upon a mere abstract proposition of law.

WRIT OF ERROR to the Circuit Court of Cook County; the Hon. E. S. WILLIAMS, Judge, presiding.

The case is stated in the opinion of the Court.

Messrs. FULLER, HAM.& SHEPARD, for the plaintiff in error.

Mr. GEORGE F. BAILEY, for the defendant in error.

Mr. JUSTICE BREESE delivered the opinion of the Court :

This was an action of replevin in the Cook Circuit Court, brought by the defendant in error against the plaintiff in error impleaded with Rufus C. Sweet, for unlawfully taking and detaining fourteen hundred and sixty-nine 3-60 bushels of growing wheat of the value of thirteen hundred dollars. The officer returned on the writ the taking by him of eight hundred

and seventy-one 35-60 bushels of the described wheat, and that the balance could not be found.

The first count of the declaration was in the *cepit* and *detinet*. The second count was in trover for fifteen hundred bushels of wheat.

The pleas were, to the first count, *non cepit* and property in the defendant. To the second count, not guilty.

Issues were made upon these pleas, and the jury found this verdict: "We, the jury, find the defendant guilty, damages assessed to one cent. We also find the property in the plain-tiff." The verdict as recorded was in this form: "We, the jury, find the issue of property for the plaintiff, and find the defendant guilty of unlawfully detaining the same from the plaintiff, and assess the damages by reason of the premises to the sum of one cent."

The motion for a new trial was overruled and a bill of exceptions taken, and also a motion in arrest of judgment was overruled, and a judgment entered as follows: "It is ordered and considered by the court, that said plaintiff do have and retain the possession of the goods and chattels replevied in said cause. And it is further considered that said plaintiff do have and recover of the defendant his damages, one cent, &c., by the jury assessed, together with his costs, &c., and have execution therefor."

Several points are made by the plaintiff in error, the first of which is the refusal of the court to arrest the judgment. The reason assigned in support of this point is, that the verdict does not respond to the issues made up.

It is true, as a general rule, that no final judgment can be rendered in any action until all the material issues of fact made in it, are determined.

Were not those issues substantially determined by the verdict? What are they? The declaration was for the wrongful taking and detention of the property, and a count in trover. The pleas were *non cepit*, property in the defendant to the first count, and not guilty to the second count. Formal issues were

made upon these pleas. The verdict of guilty must be construed as applying to the wrongful taking, and to the count in trover. The finding the property to be the property of the plaintiff is an answer to the plea of property in the defendant and negatives it. Not guilty is quite applicable to the count in trover, although the damages were assessed at only one cent, for the reason the plaintiff had by his writ of replevin the property in his possession, and therefore was not entitled to its value under the count in trover. If the damages are nominal, surely plaintiff in error should not complain, for it is to his advantage. It is perhaps correct to say, if the verdict of guilty could apply only to the count in trover, then the issue of *non cepit* remains undetermined. There is no general issue in an action of replevin, and where a plea of *non cepit* is interposed, a verdict of not guilty has been held by this court, as responsive to the issue, so that in this case this finding answers to the plea of *non cepit*, and the plea to the count in trover, and the other issue of property in the defendant is distinctly found against him. We think the verdict as found by the jury, though in some respects, perhaps, informal, responds to the several issues on trial, and the judgment rendered on this verdict, could be pleaded in bar of another action for the same cause. Of this there can be no doubt. But the verdict of guilty, as recorded by the court, is held to apply only to the charge of detaining the property. This being so, then the defendant is virtually acquitted of the charge of the conversion, and has no reason to complain. The plaintiff might allege as error, that the count and issue in trover, had not been passed upon, but the defendant can not, as it thereby virtually acquits him of the charge. *Stoltz* v. *The People*, 4 Scam. 168; *Wilderman* v. *Sandusky*, 15 Ill. 59.

The next point made by plaintiff in error is, the refusal of the court to admit in evidence the books of account of W. H. Dole & Co.

These books, it appears were kept by Dole and covered the term of the partnership of Dole & Sweet, and closed Nov.

17, 1862.   The firm had no book-keeper, and it was proved the books were perfectly reliable.

These books were offered for the purpose of showing, by the entries made therein, months before the commencement of this suit, the amount each partner contributed to the capital stock.

We can not see what relevancy such testimony as this could have to the issues pending.   It is said a question of fraud was raised as to the buying out and buying in of the interests of these partners, and that the apparently small amount plaintiff in error paid for Sweet's interest, arose from the fact that Sweet had put into the concern but a very inconsiderable part of the capital.

All this might be admitted, yet the effect upon the issues before the jury is not readily perceived.   As a general principle, the books were not evidence against third persons to prove the fact proposed unless their production had been called for by the party to be affected by them, and the entries in the books had no connection whatever with the ownership of the grain in controversy.   Nor was there any evidence proposed to be given going to show when these entries were made, or that any capital, in fact, was contributed by either party to the partnership.   It could not surely make any difference, how or by whom the capital stock was supplied, in order to determine correctly to whom this grain belonged.   The proof showed it was delivered and weighed, to be paid for on the weigher's receipts.   After the weighing, Sweet absconds without paying for the grain, and plaintiff in error steps in, claiming it.   This action was brought immediately, an issue on the fact of property in plaintiff in error was made up, and it was found against him, and we think the testimony well warrants the finding.

It is urged by the plaintiff in error that the court erred in refusing to give the eighth, twelfth, fourteenth and fifteenth instructions asked by him, and in qualifying his tenth instruction and refusing to give the same without qualification.

These instructions are as follows :

8th. "The mere fact that a person does not pay for personal property which he purchases does not make such purchase fraudulent, even though the terms be cash. It is only when a party buys property with the preconceived intention of not paying therefor, and of defrauding the vendor thereof, which intention must exist in making the purchase, that the law pronounces the transaction voidable at the option of the vendor. And, therefore, if the jury believe, from the evidence, that the grain sold by Kennedy to Sweet was purchased by Sweet in good faith, and with no intention, at the time he made the purchase, of defrauding Kennedy thereof, then they should find for the defendant."

12th. "Trover can not be maintained, for property not properly identified and the quantity of which has not been ascertained or distinguished."

14th. "In order for a vendor to recover from his vendee the possession of the property so sold, on account of fraud, the fraud must be such as would justify a conviction for obtaining goods under false pretenses, and, in this State, no person can be so convicted in cases of sales made for cash on delivery, hence, if the jury believe, from the evidence, that the sale by Kennedy to Sweet, was a sale for cash on delivery, the plaintiff can not recover, on the ground of fraud, in this case."

15th. "In cases of conditional sale, the condition may be waived by the vendor. Thus, in case of a sale for cash on delivery, if the property is delivered absolutely without payment, and the vendor, after such delivery, and without attempting to reclaim his property, endeavors to collect the purchase money therefor, as in an ordinary case of indebtedness, this is evidence from which, in the absence of other testimony, the jury may infer a waiver of the condition, and both the right of property and the right of possession become vested in the vendee. And, therefore, if the jury believe, from the evidence, that the grain in question, though originally sold to be paid for on delivery, was delivered without payment, and that the plaintiff treated the price agreed to be paid

therefor as a debt due from Sweet to him, and relied upon Sweet, and gave him credit for the purchase money, instead of seeking to recover the property, he has, thereby, waived the condition, and can not recover in this action."

The objections to the eighth instruction are, briefly, that the question of change of ownership of this grain, is put solely upon the ground of fraud in the purchaser in failing to pay for the grain at the time it was delivered, while the fact of non-payment on delivery, was the question before the jury. The sale was a sale for cash when delivered, if the cash was not paid, whether fraudulently withheld or not, the title did not pass to the purchasers—that was the point.

As to the twelfth instruction, as a legal proposition, it may perhaps be true, but error can not be assigned for refusing to give it. *Atkinson* v. *Lester*, 1 Scam. 407; *Corbin* v. *Shearer*, 3 Gilm. 482.

The fourteenth instruction should not have been given, for the reason, that fraud in the transaction, was not the only question for the jury to decide, but it was, did the title to this grain pass to Sweet, he failing to pay for it on delivery, according to the terms of the contract.

As to the fifteenth instruction, the record contains no evidence on which to base it. There is no proof that defendant in error treated the price as a debt due from Sweet to him, or gave him credit for the purchase money. On the contrary, it is in evidence that the last wheat was delivered to Sweet, about 28th January, 1863, and on that day, after Sweet's departure, defendant in error demanded the wheat of plaintiff in error, which being refused, on the next day, the 29th, the defendant in error sued out this writ of replevin. This proof destroys all idea of a credit to Sweet, and shows that the instruction was not based on the evidence in the cause.

As to the tenth instruction, it was as follows:

10th. "Although the jury believe, from the evidence, that Dole and Sweet were jointly liable to Lonergan, for the rent of the mill in question, during the months of November and

December, 1862, and January, 1863, by reason of both having executed the lease therefor, at the time they were in partnership, yet, if the jury further believe, from the evidence, that Dole & Sweet dissolved partnership on the 17th day of November, 1862, and that Sweet carried on the business alone from thence to January 28th, 1863, then, as between themselves, Sweet was bound to pay the rent during that period, and the undertaking of Dole to do so for him, and the payment of said rent by said Dole (if the jury believe Dole did so undertake and pay), would constitute a valuable consideration for the sale of property by Sweet to Dole."

The qualification thereof, was as follows:

"And in the absence of any agreement to the contrary between Dole and Sweet."

We think this qualification was proper, for if there was any agreement to the contrary of that pretended, then the plaintiff in error ought not to have the benefit of the agreement he set up.

An objection exists to the original instruction which would have justified the court in refusing it altogether, and it is this: There is no proof to which it would apply. The case shows that on the day defendant in error received the report of the weight of his wheat, he demanded payment at the mill, Sweet being out of the way, and on being refused immediately brought this suit. There was no evidence from which the jury might infer a waiver of the condition of the sale, by which the right of property, as well as of possession vested in Sweet absolutely.

Perceiving no error in the record the judgment must be affirmed.

*Judgment affirmed.*